## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**BENICE CHARLES,**

     **Petitioner,**

**-vs-**            **Case No. 2:01-cr-94-FtM-29DNF**
                **2:03-cv-96-FtM-29DNF**

**UNITED STATES OF AMERICA,**

     **Respondent.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   This Cause is before the Court on the Petitioner Benice Charles' Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc. 93) filed on March 3, 2003. On October 29, 2004, the Honorable John E. Steele, United States District Judge entered an Order (Doc. 100) which referred the Petitioner's Motion to Vacate, Set Aside Or Correct Sentence "for the purposes of holding an evidentiary hearing and submitting a report and recommendation regarding the appropriate disposition" of the issue of whether the Petitioner received ineffective assistance of counsel by his counsel's failure to file a Notice to Appeal. (See, Order, Doc. 100). An evidentiary hearing was held on March 8, 2005, and the evidence was limited to this issue. The Court appointed attorney Richard Creel to represent the Petitioner.

**History of Case**

The Petitioner was charged in a two count Indictment.  In Counts One and Two, the Petitioner was charged with possessing with intent to distribute fifty (50) grams or more of crack cocaine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A)(iii) and 18 U.S.C. §2.  Attorney Neil Potter was appointed to represent the Petitioner.   On November 2, 2001, the Petitioner entered into a Plea Agreement with the Government (Doc. 37).   On each page of the Plea Agreement, the Petitioner placed his initials, and signed his name at the end.   In addition, Petitioner's attorney Neil Potter, Assistant United States Attorney Bryant Camareno, and Managing Assistant United States Attorney Douglas Molloy[1] signed the Plea Agreement.  The Petitioner agreed to enter a plea of guilty to Counts One and Two of the Indictment.   The Petitioner agreed to the following regarding an appeal of his sentence:

> The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines.  Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground except for an upward departure by the sentencing judge, a sentence above the statutory maximum, a sentence in violation of the law apart from the sentencing guidelines, or the applicability of the "safety valve" provisions of 18 U.S.C. §3553(f) and USSG §5C1.2; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. §3742(a).

On November 14, 2001, the Petitioner entered a plea of guilty before this Court.  When asked by the Court, the Petitioner stated that he was satisfied with his counsel. (Tr. of Plea, Doc. 51, p. 5).

---

[1]  It appears that Douglas Molloy also signed for Assistant United States Attorney Robert Barclift.

The Petitioner stated that someone had read the Plea Agreement to him in Creole and that he understood the Plea Agreement. (Tr. of Plea, Doc. 51, 6-7). The Court told the Petitioner that "under some circumstances you or the Government may have the right to appeal a sentence that is imposed by the Court; however, by virtue of a provision of your plea agreement, you have agreed to limit your right to appeal. You have done this by a waiver that's contained in your plea agreement." (Tr. of Plea, Doc. 51, p. 12-13). The Petitioner responded "Yes." (Tr. of Plea, Doc. 51, p. 13). The Court then explained:

| | |
|---|---|
| THE COURT: | And the waiver says that you give up your right to appeal or contest your sentence directly or collaterally on any ground except you can challenge a sentence that would be an upward departure from the sentencing guidelines and you can only be released from this waiver if the Government exercised its right to appeal a sentence imposed, which would be if the Court departed downward. |
| THE DEFENDANT: | Yes |
| THE COURT: | Additionally, the Government will allow you to appeal the application of the safety valve provision contained in the law, which may also provide you with a lower sentence. If the District Court chooses not to follow that, you would be allowed to appeal that determination. |
| THE DEFENDANT: | Yes. |
| THE COURT: | Do you understand this waiver? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Did you make the waiver knowingly and voluntarily? |
| THE DEFENDANT: | Yes. |

(Tr. pf Plea, Doc. 51, p. 13-14).

The sentencing was conducted by the Honorable John E. Steele, United States District Judge on March 11, 2002. The Petitioner was facing a range of imprisonment of 87 to 108 months. (Tr. of Sentencing, Doc. 98, p.4). The Government moved for a two level downward departure, which the Court granted and changed the range of imprisonment to 70 to 87 months. (Tr. of Sentencing, Doc.

98, p. 4, 7, 8).  The Court sentenced the Petitioner to 70 months as to each count to run concurrently.

(Tr. of Sentencing, Doc. 98, p. 10).  Judge Steele informed the Petitioner of the following:

> Mr. Charles, to the extent permitted by your plea agreement, I would advise you that you have the right to appeal the judgment and sentence in your case.  To do that, you have to file what is called a notice of appeal within ten days of the entry of the judgment.  If you fail to file the notice of appeal, you waive or give up your right to appeal in this case.  The government may also have the right to appeal the sentence in the case.
>
> If you wish to take an appeal, you have the right to be represented by an attorney in that process and if you cannot afford an attorney, one will be appointed to represent you.
>
> Mr. Potter will consult with you within the next ten days to determine whether you wish to take an appeal or not.

(Tr. of Sentencing, Doc. 98, p. p. 13).


**Testimony**

Attorney Neil Potter testified at the evidentiary hearing that he has been an attorney since 1986 and he specializes in criminal defense. (Tr. Evid. Hrg., Doc. 110, p.3)  Every time Mr. Potter visited the Petitioner in jail, he brought a Creole interpreter because the Petitioner does not speak English. (Tr. Evid. Hrg., Doc. 110, p. 4).   Prior to signing the Plea Agreement, Mr. Potter discussed the Plea Agreement with the Petitioner at the jail for over an hour. (Tr. Evid.Hrg., Doc. 110, p. 4-5).  Remy Fenelus was the interpreter. (Tr. Evid.Hrg., Doc. 110, p. 4).   Mr. Potter reviewed the entire Plea Agreement with the Petitioner and testified that the Petitioner understood the Plea Agreement.  (Tr. Evid. Hrg., Doc. 110, p. 5-6, 8). Mr. Potter had the Petitioner initial each page, and sign the last page. (Tr. Evid.Hrg., Doc. 110, p. 6).   Mr. Potter was present at the change of plea hearing, on November 14, 2001. (Tr. Evid.Hrg., Doc. 110, p. 9).   He testified that the Court reviewed the waiver of the right

to appeal provision to the Petitioner. (Tr. Evid. Hrg., Doc. 110, p. 9-10).    Mr. Potter was also present when the Petitioner was sentenced on March 11, 2002.  (Tr. Evid. Hrg., Doc. 110, p. 10).

The day after sentencing, March 12, 2002, Mr. Potter testified that he went to the jail with the interpreter, Remy Fenelus to explain to the Petitioner the appeal process, and to review again the portion of the Plea Agreement involving an appeal. (Tr. Evid.Hrg., Doc. 110, p. 10-11).  Mr. Potter produced his notes which showed "3/12"  "jail visit - to explain appeal."  (Gov. Ex. 2)   On March 12, 2002, when Mr. Potter first met with the Petitioner,  Mr. Potter testified that the Petitioner wanted to file an appeal so that he could get out of jail, work, and send money to his daughter in Haiti. (Tr. Evid.Hrg., Doc. 110, p. 11).    The Petitioner thought the Court would have pity on him because of his daughter. (Tr. Evid.Hrg., Doc. 110, p. 13). Mr. Potter explained to the Petitioner that these were not legitimate reasons to file an appeal, and even if an appeal was filed, the Petitioner would not be released because of his Immigration hold.  (Tr. Evid.Hrg., Doc. 110, p. 11-12).   Mr. Potter repeatedly explained this to the Petitioner. (Tr. Evid.Hrg., Doc. 110, p.12).  Eventually, the interpreter Remy Fenelus held a conversation in Creole with the Petitioner. (Tr. Evid.Hrg., Doc. 110, p. 12).  At the end of this conversation, Mr. Fenelus told Mr. Potter that the Petitioner understood "what the bottom line is here." (Tr. Evid.Hrg., Doc. 110, p. 12).  Mr. Potter then asked the Petitioner if he understood that an appeal would be frivolous, and the Petitioner said that he understood. (Tr. Evid.Hrg., Doc. 110, p. 12-13).  Mr. Potter testified that the Petitioner never stated any legitimate grounds for an appeal.  (Tr. Evid.Hrg., Doc. 110, p. 13).

The interpreter Remy Fenelus testified that he accompanied Mr. Potter to the jail to interpret for the Petitioner on several occasions. (Tr. Evid. Hrg., Doc. 110, p. 18).   On March 12, 2002, Mr. Fenelus went to the jail to translate for Mr. Potter. (Tr. Evid. Hrg., Doc. 110, p. 18).  The Court file

reflects that a CJA 21 Authorization and Voucher for Expert and Other Services (Doc. 92) was completed by Mr. Fenelus showing that on March 12, 2002, he interpreted for 2 hours for Mr. Potter and Benice Charles. At the jail on March 12, 2002, Mr. Fenelus interpreted the waiver of appeal word by word. (Tr. Evid.Hrg., Doc. 110, p. 19).   The Defendant said that he wanted to appeal and thought that if he entered a plea of guilty, he would get a bond. (Tr. Evid.Hrg., Doc. 110, p. 19).   The Defendant said he wanted to file a Notice of Appeal so that he could work and send money to his daughter in Haiti. (Tr. Evid.Hrg., Doc. 110, p.19).   Mr. Fenelus tried to explain a plea of guilty is a not sufficient reason to obtain a bond for work. (Tr. Evid.Hrg., Doc. 110, p. 20-21).   Mr. Fenelus testified that Mr. Potter told the Petitioner that wanting to work and send money to a child in Haiti is not a ground for an appeal.  (Tr. Evid.Hrg., Doc. 110, p. 21-22). The Petitioner said he understood. (Tr. Evid.Hrg., Doc. 110, p. 21).   The Petitioner stated that he did not want to file an appeal.  (Tr. Evid.Hrg., Doc. 110, p. 22-23).

The Petitioner Benice Charles testified that he speaks no English. (Tr. Evid.Hrg., Doc. 110, p. 23-24).  He said that Mr. Potter always had an interpreter with him when they communicated. (Tr. Evid.Hrg., Doc. 110, p. 24).  The Petitioner testified that Mr. Potter explained the entire Plea Agreement to him, he agreed to it, and signed it. (Tr. Evid.Hrg., Doc. 110, p. 25-26).  The Petitioner testified that Mr. Potter did not come and visit him until after the ten day period to file a Notice of Appeal had expired. (Tr. Evid.Hrg., Doc. 110, p. 24, 27).  The Petitioner testified that he asked Mr. Potter to file a late appeal and Mr. Potter said that would not be possible. (Tr. Evid.Hrg., Doc. 110, p. 28-29). The Petitioner testified that his reason for appeal was to get out of jail to work and support his child. (Tr. Evid.Hrg., Doc. 110, p. 30-31).

**Analysis**

The issue referred to this Court is whether Petitioner's counsel was ineffective for not filing a notice of appeal. The Supreme Court held in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 694.  To determine if counsel was deficient in failing to file a notice of appeal, a court must first ask: "whether counsel in fact consulted with the defendant about an appeal.  We employ the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).  If counsel did consult with his client, then the question of whether counsel's performance is ineffective can be answered as follows: "Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instruction with respect to an appeal."  *Id*.  If counsel fails to consult with his client, then the court must inquire into whether this failure to consult constitutes a deficient performance.  *Id*.  One other factor to be considered by the Court is whether the defendant entered a plea of guilty or went to trial.  *Id*. at 480.  If the defendant entered a plea of guilty, then the scope of the issues to be appealed is lessened.  *Id*.

Prior to entering into the Plea Agreement, Mr. Potter explained through an interpreter that if the Petitioner signed the Plea Agreement he would be waiving certain rights including his right to appeal specific issues.  At the time of the plea of guilty and at the time of sentencing, the Court also informed the Petitioner that he was waiving certain rights including his right to appeal certain issues.

In the instant case, it is clear that Mr. Potter consulted with the Petitioner on the day after his sentencing.  In addition to the testimony of Mr. Potter and Mr. Fenelus, Mr. Potter has notes reflecting that he visited the Petitioner the day after sentencing, and the court file reflects that a Voucher was paid for work done by Mr. Fenelus on March 12, 2002, the day after sentencing.

Mr. Potter and Mr. Fenelus both testified that when they first met with the Petitioner on the day after sentencing, he wanted to file a Notice of Appeal.  Mr. Potter testified that he explained repeatedly that the grounds for appeal that the Petitioner asserted were not meritorious.  Basically, that the Petitioner's desire to get a bond, work, and send money to his child in Haiti were not proper grounds for an appeal.  Mr. Fenelus confirmed that Mr. Potter had this lengthy discussion with the Petitioner, and Mr. Fenelus even had his own discussion in Creole with the Petitioner.  At the end of the conversation on the day after sentencing, Mr. Potter testified that he asked the Petitioner whether he understood that an appeal would be frivolous and the Petitioner stated he understood.  Mr. Fenelus confirmed this statement.

At the evidentiary hearing, the Petitioner testified that Mr. Potter saw him at the jail after the ten day period to appeal had run, and that Mr. Potter said it was too late to appeal. The Court finds the Petitioner's testimony not to be credible.  The Court finds credible Mr. Potter's testimony that when he left the Petitioner after his consultation on March 12, 2002, the Petitioner realized that an appeal would be frivolous.  There is no meritorious evidence in the record that the Petitioner expressly instructed Mr. Potter to file a Notice of Appeal after Mr. Potter explained the advantages and disadvantages of appeal this action.

**Conclusion**

The Court respectfully recommends that the Petitioner's claim of ineffective assistance of counsel based upon Mr. Potter failing to file a Notice of Appeal be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida.

**DATED:**      April 22nd , 2005

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
DCCRD
Counsel of Record
Unrepresented Parties